IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>GRUPO HIMA SAN PABLO, INC.<br><br>Debtor | CASE NO. 23-02510 (ESL)<br><br>CHAPTER |
| IN RE:<br><br>CENTRO MEDICO EL TURABO, INC.<br><br>Debtor | CASE NO. 23-02513 (ESL)<br><br>CHAPTER 11 |
| IN RE:<br><br>HIMA SAN PABLO PROPERTIES, INC.<br><br>Debtor | CASE NO. 23-02515 (ESL)<br><br>CHAPTER 11 |
| IN RE:<br><br>PORTAL DE CAGUAS, INC.<br><br>Debtor | CASE NO. 23-02516 (ESL)<br><br>CHAPTER 11 |
| IN RE:<br><br>GENERAL CONTRACTING SERVICES, INC.<br><br>Debtor | CASE NO. 23-02517 (ESL)<br><br>CHAPTER 11 |
| IN RE:<br><br>IA DEVELOPERS, CORP.<br><br>Debtor | CASE NO. 23-02519 (ESL)<br><br>CHAPTER 11 |
| IN RE:<br><br>CMT DEVELOPMENT, LLC.<br><br>Debtor | CASE NO. 23-02520 (ESL)<br><br>CHAPTER 11 |
| IN RE:<br><br>JOCAR ENTERPRISES, INC.<br><br>Debtor | CASE NO. 23-02521 (ESL)<br><br>CHAPTER 11 |

| | |
|---|---|
| IN RE:<br><br>JERUSALEM HOME AMBULANCE, INC.<br><br>Debtor | CASE NO. 23-02522 (ESL)<br><br>CHAPTER 11 |
| IN RE:<br><br>HOST SECURITY SERVICES, INC.<br><br>Debtor | CASE NO. 23-02523 (ESL)<br><br>CHAPTER 11 |

## OPINION AND ORDER

The captioned cases (collectively, the "**Chapter 11 Cases**") are before the court upon the *First Amended Consolidated Chapter 11 Plan of Liquidation under Chapter 11 of the Bankruptcy Code for the Debtors' Estates, as Further Supplemented* (the "***Third Amended Chapter 11 Plan***" or "***Plan***", dkt. #1451)[1] filed on June 22, 2025, by Grupo Hima San Pablo, Inc., and its affiliated entities, as debtors and debtors-in-possession (collectively, the "**Debtors**"). Also before the court are the various objections filed by the Office of the Acting United States Trustee for Region 21 (the "**U.S. Trustee**") (the "***Objection***", dkt. #1652) arguing that the *Plan* is unconfirmable because the third-party releases, exculpation and injunction provisions included therein violate the Bankruptcy Code and applicable case law; and the Debtors' *Reply to the [U.S. Trustee]'s Objection to the First Amended Chapter 11 Plan, as Supplemented* (the "***Reply***", dkt. #1692) arguing that the U.S. Trustee's position was previously litigated and rejected during the approval of the disclosure statement, and the opt-out mechanism proposed in the *Plan* provides for consensual, and thus valid and enforceable, third-party releases under Puerto Rico and federal law.

Today the court entered an *Order Confirming Chapter 11 Plan of Liquidation*, finding that the *Third Amended Chapter 11 Plan* satisfied all the requirements for confirmation, overruling all objections pertaining to confirmation of the *Plan* that had not been previously

[1] The motion[s] was[were] filed in each of the captioned Chapter 11 Cases. Reference, however, is made only to docket entries in Lead Case No. 23-02510. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the motion[s].

withdrawn, resolved, or otherwise settled, and stating that it would issue a separate order setting forth its reasoning on the U.S. Trustee's *Objection*. See, dkt. #1909. As such, and for the reasons discussed herein, the U.S. Trustee's *Objection* is hereby **OVERRULED**. The court finds that the third-party releases included in the *Third Amended Chapter 11 Plan* are consensual under federal law and are binding on the Releasing Parties. The court also finds and concludes that both the exculpation and injunction provisions in the *Third Amended Chapter 11 Plan* are appropriate.

I. Relevant Procedural Background

1. On August 15, 2023 (the "**Petition Date**"), the Debtors filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. See, dkt. #1.

2. Since the Petition Date, the Debtors have undertaken substantial efforts toward restructuring their affairs, including administering the estates, engaging in asset sale processes, and negotiating the terms of a consensual chapter 11 plan.

3. On June 24, 2024, the Debtors filed a *Disclosure Statement for Joint and Consolidated Plan of Liquidation under Chapter 11 of the Bankruptcy Code* (the "***First Disclosure Statement***", dkt. #951).

4. The next day, the Debtors filed a *Joint and Consolidated Chapter 11 Plan of Liquidation under Chapter 11 of the Bankruptcy Code for the Debtors' Assets* (the "***First Chapter 11 Plan***", dkt. #954), proposing the automatic release and exculpation of non-debtor third parties from a wide variety of claims arising from or related to the Debtors' operations or their conduct during the bankruptcy proceedings (excluding claims for willful misconduct or intentional fraud) unless the "Releasing Parties" fill an opt-out form. See, dkt. #954, §§ 10.05, 10.06.

5. On August 1, 2024, the Debtors and the Official Unsecured Creditors' Committee (the "**UCC**") filed a *Joint Motion to Supplement Disclosure Statement and Joint Plan of Liquidation*. See, dkt. #1009.

6. Several parties objected[2] to the *First Disclosure Statement*, as supplemented, including the U.S. Trustee (dkt. #1031), who argued that the *First Disclosure Statement* did not prominently inform creditors that their failure to complete an opt-out form will result in them granting extensive third-party releases; that non-consensual third-party releases, like the ones included in the *First Disclosure Statement*, cannot be approved post Harrington vs. Purdue Pharma L.P., 603 U.S. 204 (2024); and that the *First Chapter 11 Plan* purports to treat creditors accepting such plan as automatically consenting to third-party releases even though a "court must ascertain whether the creditor unambiguously manifested assent to the release of the non-debtor from liability on its debt" (dkt. #1031, p. 8). The U.S. Trustee further argued that, under Puerto Rico law, "implied consent" is applicable only if facts show unequivocal will to consent cannot be compatible with another intent, or subject to different interpretations. According to the U.S. Trustee, for silence to operate as acceptance there must be a duty to speak, and there is no basis to find that a Releasing Party has a "duty to speak" and opt-out of the third-party releases. The U.S. Trustee also argued that the exculpations are overly broad, provide an almost blanket immunity for all claims that are not based on fraud or willful misconduct, are beyond what is authorized under Section 1125(e) of the Bankruptcy Code, 11 U.S.C. § 1125(e), and deviate from First Circuit precedent, citing pre–Purdue Pharma caselaw. It is the U.S. Trustee's position that consent should be demonstrated through an unequivocal opt-in procedure under which no party is deemed to have granted a third-party release unless they opted to do so in a way that is separate from the party's vote with respect to the plan, and the exculpation provision should be limited.

7. On September 5, 2024, the court held a hearing on the approval of the *First Disclosure Statement*, where the Debtors stated that the issues raised in the U.S. Trustee's objection required substantial research and requested additional time to respond thereto and to

[2] Objections were also filed by (i) the Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**") on behalf of certain government entities (dkt. #1033), (ii) SL Funding 3, LLC ("**SL Funding**") (dkt. #1035; see, Debtors' response at dkt. #1051), and (iii) Metro Caguas Incorporated ("**Metro Caguas**") (dkt. #1036; see, Debtors' response at dkt. #1049). Only the objections filed by AAFAF and SL Funding included arguments related to the validity of the third-party releases.

amend the *First Disclosure Statement*, including the opt-out form related to the proposed third-party releases. See, *Minutes*, dkt. #1056.

8. On November 1, 2024, the Debtors filed a *First Amended Disclosure Statement for First Amended Consolidated Plan of Liquidation under Chapter 11 of the Bankruptcy Code* (the "***First Amended Disclosure Statement***", dkt. #1100) and *First Amended Consolidated Chapter 11 Plan of Liquidation under Chapter 11 of the Bankruptcy Code for the Debtors' Estates* (the "***First Amended Chapter 11 Plan***", dkt. #1101). The *First Amended Chapter 11 Plan* included a hybrid affirmative opt-out/opt-in procedure, depending on whether parties had filed a notice of appearance and/or were represented by an attorney on the record. In sum, parties who have filed electronic appearances and/or are represented by counsel, regardless of whether they vote to accept or reject the plan, must affirmatively opt-out of the releases. Meanwhile, parties who have not filed electronic appearances and/or are not represented by counsel, and regardless of whether they vote to accept or reject the *First Amended Chapter 11 Plan*, must affirmatively opt-in of the releases.

9. Several parties objected[3] to the *First Amended Disclosure Statement*, including the U.S. Trustee (dkt. #1133), who argued that although the *First Amended Disclosure Statement* and the *First Amended Chapter 11 Plan* made some improvements with the implementation of a hybrid opt-out/opt-in procedure, the use of opt-outs run afoul to Purdue Pharma. The U.S. Trustee also argued that consent must be assessed under state law, not federal law, and that, under state law (i) silence cannot equate to consent and (ii) settlement agreements must be consensual, in writing, and based on mutual concessions. Thus, the conflation of voting for the plan with acceptance of the third-party release violates state law. According to the U.S. Trustee, voting for a plan disposing of claims against the Debtors and its bankruptcy estate does not reflect the unambiguous assent necessary to find consent to a release of claims against other parties, and it does not meet the requisites for a settlement agreement under Puerto Rico law: a written

[3] Objections were also filed by (i) Metro Caguas (dkt. #1115; see, Debtors' response at dkt. #1183), (ii) SL Funding (dkt. #1131), and (iii) the UCC (dkt. #1190). These objections did not include arguments related to the proposed third-party releases.

document, a clear intention to renounce legal rights, and reciprocal concessions. As to the reciprocal concessions, the U.S. Trustee argued that creditors who are being asked to opt-out will receive the same distributions as those who choose not to opt out. Ergo, creditors are being asked to give releases to third parties for no consideration. The U.S. Trustee also argued that: (1) the *First Amended Chapter 11 Plan* and the Sample Ballots contained contradictory language as to who would be deemed to consent to the releases; (2) the *First Amended Chapter 11 Plan* contained several provisions that circumvented the Bankruptcy Code's prohibition on Debtors receiving a discharge, including a "Temporary Injunction;" and (3) the *First Amended Chapter 11 Plan*'s exculpation provisions did not carve out gross negligence, extended beyond case fiduciaries, and covered post-Effective Date activity.

10. The Debtors filed a response (dkt. #1191) to the U.S. Trustee's second objection arguing that they made significant changes to address the U.S. Trustee's previous objection and that the provisions included in the *First Amended Disclosure Statement* and the *First Amended Chapter 11 Plan* are reasonable, adequate, voluntary and permissible. The Debtors argued that several courts have determined that an opt-out procedure complies with the required consent elements to approve the third-party releases post-<u>Purdue Pharma</u>, *supra*. The Debtors further argued that Puerto Rico law is inapplicable to the issue of whether silence constitutes consent in the context of an opt-out procedure and instead relied on several out-of-circuit cases that have approved opt-out procedures as consensual under federal bankruptcy law. As to the exculpation provisions, the Debtors argued that similar provisions were approved as reasonable in the Title III cases of the Puerto Rico Highways and Transportation Authority ("**HTA**") and the Puerto Rico Sales Tax Financing Corporation ("**COFINA**") and by the U.S. Court of Appeals for the Third Circuit in <u>In re PWS Holding Corp.</u>, 228 F.3d 224 (3rd Cir. 2000), despite that case only allowing exculpation for estate fiduciaries during the case and including an exception for gross negligence. As to the Temporary Injunction, the Debtors argued that said provision did not amount to a *de facto* discharge, and that the same was necessary to protect the post-Effective

Date entities from interference by the creditors while they carry out the distribution of assets contemplated by the *First Amended Chapter 11 Plan*.

11. On January 21, 2025, the court held a hearing regarding approval of the *First Amended Disclosure Statement*, during which the U.S. Trustee and the Debtors presented arguments concerning the proposed third-party releases. See, *Amended Minutes*, dkt. #1205. During the hearing, the court noted that consensual third-party releases may be authorized and addressed the structure of the Debtors' proposed opt-out mechanism. The court took the issue of the third-party releases under advisement. Id.

12. On May 2, 2025, the Debtors filed a *First Amended Disclosure Statement for the First Amended Consolidated Plan of Liquidation under Chapter 11 of the Bankruptcy Code, as Supplemented* (the "***Second Amended Disclosure Statement***", dkt. #1329) and *First Amended Consolidated Chapter 11 Plan of Liquidation under Chapter 11 of the Bankruptcy Code for the Debtors' Estates, as Supplemented* (the "***Second Amended Chapter 11 Plan***", dkt. #1330). The *Second Amended Chapter 11 Plan* eliminated the opt-in procedure and proposed opt-outs be applicable to all creditors. Creditors who filed electronic appearances, are represented by counsel, and/or were duly notified in these cases and received copies of the plan and ballot, and do not opt-out of the releases (regardless of whether they vote to reject the *Second Amended Chapter 11 Plan*, abstain from voting, or are not entitled to vote), will be deemed to have consented to the release, injunction, and exculpation provisions of Section 10.05 of the *Second Amended Chapter 11 Plan.* Creditors who vote to accept the *Second Amended Chapter 11 Plan* will be deemed to automatically consent to the third-party releases, even if they choose to fill an opt-out form.

13. On the same date, the Debtors, Island Healthcare, LLC in its capacity as the DIP Lender (the "**DIP Lender**"), and Alter Domus (US), LLC in its capacity as the agent of the DIP Lender (the "**DIP Agent**") filed a *Joint Motion to Supplement Debtors' Response to the U.S. Trustee's Objection to the Plan's Consensual Releases in Light of Recent court Decisions*, supplementing the Debtors' response to the U.S. Trustee's objection at dkt. #1191, and

discussing certain recent decisions on the appropriateness of the opt-out procedures as proof of consent to third-party releases. See, dkt. #1331.

14. The U.S. Trustee filed an objection (dkt. #1355) to the *Second Amended Disclosure Statement* arguing that it eliminated the opt-in procedure that was included in the previous version and only allows for the use of opt-out procedures, which are inadequate to obtain creditors' consent to the third-party releases.[4] The U.S. Trustee argued that, for the third-party releases to be compliant under Puerto Rico law, there must be voluntary action through an opt-in procedure. The U.S. Trustee also argued that the exculpation provisions are overly broad in contravention of First Circuit precedent, that they do not carve out gross negligence, extend beyond case fiduciaries, and cover post-Effective Date activity; and, the injunction circumvents the Bankruptcy Code's prohibition on Debtors' receiving a discharge, under the guise of protecting the plan's implementation.

15. The Debtors filed a response (dkt. #1408) to the U.S. Trustee's third objection arguing that many courts have determined that opt-out procedures like the one proposed in the *Second Amended Chapter 11 Plan* comply with the required consent elements to approve third-party releases post-Purdue Pharma. The DIP Lender and the DIP Agent joined the Debtors' response to the U.S. Trustee's objection, clarifying that the plan's Effective Date is January 31, 2026 (dkt. #1416).

16. At a subsequent hearing on the approval of the disclosure statement held on July 11, 2025, the Debtors and the U.S. Trustee presented arguments regarding the latest version of the proposed third-party releases in the *Second Amended Disclosure Statement* and the *Second Amended Chapter 11 Plan*. See, *Minutes*, dkt. #1434. During the hearing, the court noted In re GOL Linhas Aereas Inteligentes S.A., 672 B.R. 129 (Bankr. S.D.N.Y. 2025), where the U.S. Bankruptcy Court for the Southern District of New York found and held that bankruptcy courts have authority to grant consensual third-party releases under federal law. The court ordered the

[4] Eastern Health LLC also filed an objection to the *Second Amended Disclosure Statement* at dkt. #1356 on different grounds. The Debtors filed a response thereto at dkt. #1421.

Debtors to supplement the disclosure statement to address the pending objections, and again took the issue of the proposed third-party releases under advisement.

17. On July 22, 2025, the Debtors filed a *First Amended Disclosure Statement for the First Amended Consolidated Plan of Liquidation under Chapter 11 of the Bankruptcy Code, as Further Supplemented* (the "***Third Amended Disclosure Statement***", dkt. #1450) and the *Third Amended Chapter 11 Plan* (dkt. #1451).[5] The proposed third-party releases remained unchanged.

18. No objection to the *Third Amended Disclosure Statement* was filed. Consequently, on August 15, 2025, the court entered an *Order Approving Disclosure Statement and Establishing Solicitation Procedures* (dkt. #1476), approving the *Third Amended Disclosure Statement* and overruling any objections thereto not previously withdrawn or resolved (id., p. 5, ¶ 3).

19. On January 13, 2025, the U.S. Trustee filed its *Objection* (dkt. #1652) arguing that the *Third Amended Chapter 11 Plan* is unconfirmable because the third-party releases, exculpation and injunction provisions included therein violate the Bankruptcy Code and applicable case law.

20. On March 2, 2026, the Debtors filed their *Reply* (dkt. #1692) arguing that the *Objection* should be denied because it largely repeats issues already litigated and rejected during the disclosure statement proceedings and because, under Puerto Rico and federal law, the opt-out mechanism proposed constitutes a consensual third-party release.

21. Objections to the *Third Amended Chapter 11 Plan* were also filed by LUMA Energy, LLC and LUMA Energy ServCo, LLC (collectively, "**LUMA**") (dkt. #1568)[6] and the U.S. Department of Justice on behalf of the Internal Revenue Service of the United States of

---

[5] See, *Proposed Confirmation Order*, dkt. #1739-1.

[6] Resolved via a *Joint Stipulation and Supplement to Plan of Liquidation* (dkt. #1740) approved on April 22, 2026 (dkt. #1749).

America (the "**DOJ (acting on behalf of the IRS)**") (dkt. #1621).[7] Neither objection asserts any argument nor otherwise challenges third-party releases.

22. On March 9, 2026, the court held a confirmation hearing to consider the *Third Amended Chapter 11 Plan* and any objections thereto (the "**Confirmation Hearing**"). See, *Minutes*, dkt. #1701. At the Confirmation Hearing, counsel for the Debtors stated that there has been substantial support for the *Third Amended Chapter 11 Plan* and summarized the Ballots received (dkts. ##1570, 1691, 1696, 1698, and 1699). Addressing the matter of the U.S. Trustee's *Objection*, the court clarified that the issue of the third-party releases had not been resolved at the disclosure statement stage and was under advisement, as reflected in the minutes of the hearings held. When asked by the court if they had additional arguments to present, counsel for the Debtors referenced the arguments made in previous motions and argued that there has been great support for the *Third Amended Chapter 11 Plan* and that the opt-out procedure was understood by the creditors as some have used it, while counsel for the U.S. Trustee informed the court of In re The Diocese of Buffalo, N.Y., 2026 WL 585099 (Bankr. W.D.N.Y. 2026), which cites with approval the reversal of GOL Linhas, *supra*, a decision previously noted by this court as supporting plans that propose opt-out third-party release provisions. The court granted the Debtors additional time to inform the status of settlement negotiations with LUMA and the DOJ (acting on behalf of the IRS), and any other pending matters. Confirmation and other related pending matters were held in abeyance.

23. On April 10, 2026, the Debtors filed a *Motion to Supplement the Global Term Sheet* (dkt. #1741), formally incorporating an additional contribution to fund the plan.

24. The Debtors and the DOJ (acting on behalf of the IRS) continued to engage in settlement discussions to resolve the latter's objection to the *Third Amended Chapter 11 Plan*, which was subsequently withdrawn on June 23, 2026. See, dkts. ##1771, 1777, 1812, 1823, 1850.

---

[7] Withdrawn at dkt. #1850.

25. On July 9, 2026, the Debtors filed a *Motion to Submit Revised Proposed Confirmation Order and Final Status of Resolution of the Pending Confirmation Issues and Compliance with Order at Docket No. 1701* (dkt. #1869) informing the court that they have addressed all matters that remained pending after the Confirmation Hearing and submitting a revised Proposed Confirmation Order for the *Third Amended Chapter 11 Plan* for the court's consideration and approval.

26. On July 29, 2026, the Debtors filed a *Motion to Supplement the Global Term Sheet* (dkt. #1895) updating the dates provided as milestones in the *Global Term Sheet*.[8]

## II. Legal Issue

The issue under the court's consideration is whether the third-party releases set forth in Section 10.05 of the *Plan* are consensual and therefore binding and enforceable, where Releasing Parties received adequate notice of such releases and a meaningful opportunity to opt-out.

This issue is twofold: first, the court must determine whether state or federal law governs the determination of consent; and second, the court must evaluate whether the opt-out mechanism provided in the *Third Amended Chapter 11 Plan* constitutes valid consent under the applicable law.

## III. Position of the Parties

### *A. The U.S. Trustee*

The U.S. Trustee objects to confirmation of the *Third Amended Chapter 11 Plan*, arguing that certain provisions render the *Plan* unconfirmable. The *Objection* focuses primarily on the *Third Amended Chapter 11 Plan*'s third-party release provisions, which the U.S. Trustee contends constitute impermissibly non-consensual releases under Puerto Rico law. Specifically, the U.S. Trustee argues that the opt-out mechanism improperly treats silence as affirmative consent, thereby rendering the releases non-consensual and contrary to the U.S. Supreme Court's decision in Purdue Pharma. The U.S. Trustee further argues that a recent out-of-circuit district

[8] The *Global Term Sheet* was originally filed at dkt. #902 and subsequently amended at dkts. ##1009, 1309, 1329, 1450, and 1741.

court decision reversing the bankruptcy court in GOL Linhas supports its position.[9] In that case, the District Court for the Southern District of New York concluded that silence or failure to opt out cannot constitute consent to a third-party release, regardless of whether federal or state law applies. The U.S. Trustee posits that the Debtors' *Plan* improperly imposes releases on parties who have not affirmatively agreed to them and therefore cannot satisfy the confirmation requirements of the Bankruptcy Code.

In addition, the U.S. Trustee objects to the scope of the *Third Amended Chapter 11 Plan*'s exculpation provisions, asserting that they are impermissibly broad, as they extend exculpation protections to numerous parties who are not estate fiduciaries, including certain lenders, agents, affiliates, and other related parties. The U.S. Trustee contends that exculpation should be limited to estate fiduciaries and professionals acting within the scope of the bankruptcy case, and that the broader protections included in the *Third Amended Chapter 11 Plan* are inconsistent with established precedent. The U.S. Trustee also objects to the *Third Amended Chapter 11 Plan*'s proposed waiver of the fourteen-day stay of the confirmation order under Fed. R. Bankr. P. 3020(e), arguing that eliminating the stay would effectively deprive parties of a meaningful opportunity to seek appellate review by allowing the *Third Amended Chapter 11 Plan* to be implemented immediately, potentially rendering any appeal equitably moot.

Lastly, the U.S. Trustee contends that the *Third Amended Chapter 11 Plan* improperly treats non-voting creditors as having accepted the *Third Amended Chapter 11 Plan* and fails to comply with the requirements of Section 1129(a)(9) of the Bankruptcy Code, 11 U.S.C. § 1129(a)(9), with respect to priority claims. The U.S. Trustee argues that the *Third Amended Chapter 11 Plan* contemplates that certain priority claims, including tax claims and other administrative claims, will receive only partial payment, even though such claims must generally be paid in full unless the holder agrees to different treatment. For these reasons, the U.S Trustee argues that the *Plan* cannot be confirmed as proposed.

---

[9] GOL Linhas Aéreas Inteligentes S.A., 675 B.R. 125 (S.D.N.Y. 2025), *rev'd*, 672 B.R. 129, 159 (Bankr. S.D.N.Y. 2025).

*B. The Debtors*

The Debtors argue that that the *Objection* should be denied on procedural grounds because it largely repeats arguments that were previously raised and overruled during the disclosure statement proceedings, and the doctrines of *res judicata* and collateral estoppel preclude the U.S. Trustee from relitigating those issues at the confirmation stage.[10] Moreover, creditors have already voted to accept or reject the *Third Amended Chapter 11 Plan* as per the approved solicitation procedures.

On the merits, the Debtors argue that the GOL Linhas, *supra*, is distinguishable because it applied New York law, whereas the present case is governed by Puerto Rico law and First Circuit precedent, which recognize forms of tacit or implied consent in certain circumstances. Per the Debtors, unlike in GOL Linhas, *supra*, here the *Third Amended Chapter 11 Plan* provides creditors with clear notice that failure to opt out of the third-party releases will be deemed consent, and the solicitation materials provide multiple straightforward methods for creditors to opt out of the third-party releases. As a result, the Debtors contend that the third-party releases in the *Third Amended Chapter 11 Plan* are consensual and consistent with applicable law. The Debtors further argue that courts have recognized that consent in the bankruptcy context may be implied from a party's conduct after receiving clear notice and an opportunity to respond. The Debtors cite out-of-circuit decisions holding that a creditor who receives adequate notice of a third-party release and fails to opt out may be deemed to have consented. The Debtors therefore posit that the U.S. Trustee's reliance on a single district court decision does not override the substantial body of case law approving similar opt-out release mechanisms.

The Debtors did not respond directly in the *Reply* to the U.S. Trustee's arguments regarding the validity of the exculpation provisions and the temporary injunctions included in

[10] This argument was addressed by the court at the Confirmation Hearing held on March 9, 2026. See, *Minutes*, dkt. #1701. Per the *Minutes*, "the court clarified that the issue of the third-party releases that is at the center of the U.S. Trustee's objection had not been resolved at the Disclosure Statement stage and was taken under advisement, as reflected in the minutes of the hearings held on that matter (see, dkts. ## 1205, 1434)". dkt. #1701, p. 4, ¶¶3-6.

the *Third Amended Chapter 11 Plan*. Instead, they made reference to prior filings at dkts. ##1191, 1331, 1408, 1416.

Finally, the Debtors argue that they have addressed many of the U.S. Trustee's concerns through "thoughtful amendments to the Disclosure Statement and Plan, including streamlined opt-out procedures and clear, conspicuous notice of releases" (dkt. #1692, § 3) and emphasize that the *Third Amended Chapter 11 Plan* reflects extensive negotiations among the Debtors and their key stakeholders and has received significant creditor support. The Debtors note that thousands of Ballots were submitted during the voting process and that multiple classes of creditors voted overwhelmingly in favor of the *Third Amended Chapter 11 Plan*. It is the Debtors' position that strong creditor support and the fact that creditors and parties-in-interest have been able to understand the opt-out process and opt out when they deemed proper to do so, demonstrate that the *Third Amended Chapter 11 Plan* represents a fair and consensual resolution of the Debtors' restructuring and further supports confirmation notwithstanding the U.S. Trustee's objections.

## IV. Applicable Law and Discussion

### A. *Third-Party Releases*

#### *i. The U.S. Supreme Court's decision in Purdue Pharma*

The controversy over whether a non-debtor third-party release may be part of a Chapter 11 plan of reorganization has been addressed in modern bankruptcy jurisprudence and practice. The Supreme Court's decision in Purdue Pharma marks a significant, though carefully circumscribed, clarification of the permissibility of third-party releases in a Chapter 11 plan of reorganization. There, the Supreme Court held that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor *without the consent* of affected claimants". Harrington v. Purdue Pharma L. P., 603 U.S. at 227 (emphasis ours). The Supreme Court emphasized that "[n]othing in what [it] ha[s] said should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan; those sorts of releases pose

different questions and may rest on different legal grounds than the nonconsensual release at issue here". Id., at 226. At the same time, the Supreme Court expressly declined to delineate the contours of consent, noting that it did not "have occasion ... to express a view on what qualifies as a consensual release … against a third-party nondebtor". Id.

In the wake of Purdue Pharma, courts have adopted divergent approaches to determining what constitutes "consent", with some looking to federal law while others consider state contract law principles. Neither before nor after Purdue Pharma has the U.S. Court of Appeals for the First Circuit (the "**First Circuit**") directly addressed what constitutes consent to a third-party release.[11] Prior to Purdue Pharma, however, lower courts in our circuit had addressed this issue. See, *e.g.*, In re Grove Instruments, Inc., 573 B.R. 307, 313–15 (Bankr. D. Mass. 2017) (collecting cases and discussing standard in the First Circuit prior to Purdue Pharma); In re Quincy Medical Center, Inc., 2011 WL 5592907 (Bankr. D. Mass. 2011) (holding that third-party releases in a Chapter 11 plan are permissible only if they are consensual). Because Purdue Pharma left the question of "consent" unresolved, pre-Purdue Pharma authority remains instructive.

*ii. Applicable Law and the Meaning of Consent After Purdue Pharma*

After Purdue Pharma, determining whether there is consent to third-party releases is central to both the confirmation of a Chapter 11 plan or reorganization and the enforceability of its provisions. In the instant case, the U.S. Trustee argues that third-party releases implemented through opt-out mechanisms are non-consensual under state law and, therefore, barred by Purdue Pharma. The Debtors contend that federal law governs the issue of consent in the Chapter 11 plan confirmation context and that, even if state law applies, Puerto Rico contract law principles recognize implied consent through inaction.

The court begins by examining the threshold question of whether state or federal law controls the determination of consent in this context. When faced with similar questions, bankruptcy courts in other districts have recognized that there may be "federal interests that

[11] The court notes the First Circuit's Opinion in In re Financial Oversight and Management Board of Puerto Rico, 178 F.4th 747 (1st. Cir. 2026) discussing the issue of third-party releases post-Purdue Pharma. However, such discussion did not address what constitutes consent as this question was not under the court's consideration.

require an application of federal law where state law might otherwise govern". Epstein v. The Container Store Group Inc. (In re Container Store Grp., Inc.), 676 B.R. 356, 374 (S.D. Tex. 2026), quoting Butner v. United States, 440 U.S. 48, 55 (1979) (quotations omitted). "In such situations, it is for the federal courts to fashion the governing rule of law according to their own standards". Container Store, 676 B.R. at 374, quoting Clearfield Tr. Co. v. United States, 318 U.S. 363, 367 (1943) (quotations omitted).

This principle carries particular significance in the plan confirmation context under federal bankruptcy law. Sections 1123 and 105 of the Bankruptcy Code, 11 U.S.C. §§ 1123, 105, confer broad authority on bankruptcy courts to determine the contents of a reorganization plan and to issue orders necessary to carry out the provisions of the Bankruptcy Code. Specifically, Section 1123 identifies the required contents for a Chapter 11 reorganization plan, including mandatory and discretionary provisions, and it contemplates that a plan shall provide "the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment". 11 U.S.C. § 1123(a)(4). Further, Section 1123(b)(6) provides that a Chapter 11 reorganization plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]". 11 U.S.C. § 1123(b)(6). Meanwhile, Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]". 11 U.S.C. § 105(a). Courts have found that it is "incorrect to say that a bankruptcy court may approve only those procedures expressly spelled out in the Bankruptcy Code" as Section 105 "permits [it] to issue orders necessary or appropriate to carry out the provisions of title 11, so long as those orders do not contravene the Bankruptcy Code". In re Pat McGrath Cosmetics LLC, 2026 WL 1088157, 2026 Bankr. LEXIS 1019, at *5 (Bankr. S.D. Fla. 2026).

These provisions of the Bankruptcy Code reflect a strong federal interest in the uniform administration of Chapter 11 reorganization plans. Consistent with that interest, courts in other circuits have applied federal law to determine whether parties consented to third-party releases included in a Chapter 11 plan. See, *e.g.*, In re Pat McGrath Cosmetics LLC, 2026 WL 1088157,

2026 Bankr. LEXIS 1019 (Bankr. S.D. Fla. 2026) (finding that third-party releases were consensual under federal bankruptcy law because there was due and adequate notice of the opportunity to opt out); Epstein v. Container Store Grop. Inc (In re Container Store Grp., Inc.), 676 B.R. 356 (S.D. Tex. 2026) (finding that federal law governs the consent inquiry); In re Spirit Airlines, Inc., 668 B.R. 689 (Bankr. S.D.N.Y. 2025) (finding federal law controls the issue of consent to third-party releases, and that the third-party releases in that case were consensual and the proposed opt-out mechanism was permissible as creditors received clear notice and a meaningful opportunity to decline the release). Specifically, other courts have found that "a bankruptcy court's power to grant consensual third-party releases is based on its authority to include in reorganization plans 'appropriate' provisions that are not 'inconsistent' with the [Bankruptcy] Code … and to issue any 'order … that is necessary or appropriate to carry out' such provisions". Container Store, 676 B.R. at 378. Similarly, courts in other circuits have recognized that bankruptcy courts possess "authority, subject to the requirements of due process and certain limitations, to approve consensual third-party releases" under 11 U.S.C. § 105(a). In re Pat McGrath Cosmetics LLC, 2026 WL 1088157, at *5.

As explained by the U.S. District Court for the Southern District of Texas, "a bankruptcy court's authority to enter consensual releases follows from the [Bankruptcy] Code's text and structure" and therefore "raises questions of federal law", including "what it means to 'agree' ". Container Store, 676 B.R. at 378. In other words, "[a] bankruptcy court's authority to enter consensual third-party releases is a matter of federal law". Id., at 382. This court therefore concludes that whether a creditor has consented to such a release is likewise a question of federal law.

*iii. Permissibility of Opt-Out Procedures and Silence as Consent under Federal Law*

Even before Purdue Pharma, courts held that a party's failure to opt out of a third-party release after receiving clear and conspicuous notice constituted consent. See, *e.g.*, In re Avianca Holdings S.A., 632 B.R. 124 (Bankr. S.D.N.Y. 2021) (finding consent where the ballot clearly explained the opt-out procedure and placed affected parties on notice that their rights would be

affected); In re LATAM Airlines Grp. S.A., 2022 WL 2206829 (Bankr. S.D.N.Y. 2022), *corrected*, 2022 WL 2541298 (Bankr. S.D.N.Y. 2022), *aff'd sub nom.*, 643 B.R. 756 (S.D.N.Y. 2022), *aff'd sub nom.*, 643 B.R. 741 (S.D.N.Y. 2022), *aff'd sub nom.*, 55 F.4th 377 (2nd Cir. 2022) (finding that an opt-out mechanism was valid where creditors and interest holders were provided with a clear and prominent explanation of the procedure).

Courts post-Purdue Pharma have diverged in their treatment of opt-out mechanisms. As discussed in In re Lutheran Home and Services for the Aged, Inc., 2026 WL 626606, 2026 Bankr. LEXIS 541 (Bankr. N.D. Ill. 2026), the caselaw reflects a split across jurisdictions. In New York, courts continue to find opt-out releases consensual where procedural safeguards, such as clear drafting and prominent disclosure, demonstrate meaningful consent. See, e.g., In re Spirit Airlines, Inc., 668 B.R. 689, 707–08 (Bankr. S.D.N.Y. 2025). Other courts in that district, however, have rejected opt-out mechanisms based on contract law principles. See, In re GOL Linhas Aéreas Inteligentes S.A., 675 B.R. 125 (S.D.N.Y. 2025). In Delaware, courts have also been split, with some finding that opt-out procedures are consensual, analogizing them to other aspects of the bankruptcy practice where creditors are deemed to consent to relief against them by failing to raise a timely objection to a request despite notice. See, In re Arsenal Intermediate Holdings, LLC, 2023 WL 2655592, at *7 (Bankr. D. Del. 2023). See also, In re Mallinckrodt PLC, 639 B.R. 837, 879–81 (Bankr. D. Del. 2022); In re Boy Scouts of Am. & Del. BSA, LLC, 642 B.R. 504, 675 (Bankr. D. Del. 2022), *aff'd*, 650 B.R. 87 (D. Del. 2023), *aff'd in part, rev'd in part, dismissed in part*, 137 F.4th 126 (3rd Cir. 2025); In re Indianapolis Downs, LLC, 486 B.R. 286, 306 (Bankr. D. Del. 2013). Others have expressed skepticism, suggesting that, in light of Purdue Pharma's interpretation of 11 U.S.C. § 1123(b)(6), creditors should not be deemed to consent merely by failing to object. In re Smallhold, Inc., 665 B.R. 704, 717 (Bankr. D. Del. 2024). By contrast, courts in the Southern District of Texas have continued to consistently approve opt-out mechanisms for consensual releases after evaluating the specific facts of the case. "Hundreds of chapter 11 cases have been confirmed in th[e Southern]District [of Texas] with consensual third-party releases with an opt out. And, again, Purdue [Pharma] did not change

the law in this Circuit". In re Lutheran Home and Services for the Aged, Inc., 2026 WL 626606, at *22, quoting In re Robertshaw US Holding Corp., 662 B.R. 300, 323 (Bankr. S.D. Tex. 2024), citing Cole v. Nabors Corp. Servs., Inc. (In re CJ Holding Co.), 597 B.R. 597, 609 (S.D. Tex. 2019).

This divergence in interpretation is due in part because, in Purdue Pharma, the Supreme Court did not address when third-party releases are considered consensual, thus leaving the definition of consent open to the interpretation of the courts. The more precise question, however, is whether consent can be inferred through opt-out procedures, namely through the absence of an affirmative action by the releasing parties. In addressing that issue, it is significant that bankruptcy law recognizes implied consent through inaction, provided that adequate notice is given. As the Bankruptcy Appellate Panel for the First Circuit and the U.S. Court of Appeals for the Seventh Circuit have held, consent in bankruptcy is often inferred from silence provided there is notice and opportunity to object. See, In re Colarusso, 295 B.R. 166, 175 (B.A.P. 1st Cir. 2003), *aff'd,* 382 F.3d 51 (1st Cir. 2004); FutureSource LLC v. Reuters Ltd., 312 F.3d 281, 285 (7th Cir. 2002). See also, BAC Home Loans Servicing LP v. Grassi, 2011 WL 6096509, at *5 (B.A.P. 1st Cir. 2011) ("This Panel, as well other courts in this circuit and nationally, views silence as implied consent sufficient to satisfy the consent requirement for approving a sale under § 363(f)(2)". Finding that the sale order was proper under 11 U.S.C. 363(f)(2) because creditor received notice of the proposed sale and did not file a timely objection). The Supreme Court has likewise recognized that consent to a bankruptcy court's jurisdiction may be implied absent a timely objection. See, Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 683–84 (2015). More broadly, the bankruptcy rules expressly permit courts to grant relief where a party is properly served and does not respond. See, e.g., Fed. R. Bankr. P. 4001(d)(3); P.R. L.B.R. 2004-1(f); P.R. L.B.R. 3007-1(d). These practices reflect the basic principle of bankruptcy procedure that, where parties are given clear notice and an opportunity to be heard, their failure to act may carry legal consequences.

Due process principles reinforce this conclusion. Analyzing provisions of the Bankruptcy Code, the First Circuit has held that due notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections". Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.), 534 F.3d 76, 83 (1st Cir. 2008), quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). Where that standard is satisfied, the failure to respond cannot be dismissed as mere inaction; rather, it reflects a meaningful choice. Consistent with this principle, courts that have permitted opt-out mechanisms in third-party releases have focused on "whether the creditor received clear and conspicuous notice of the release, understood the consequences of inaction, and had a meaningful opportunity to decline the release by opting out". In re Pat McGrath Cosmetics LLC, 2026 WL 1088157, at *5.

In sum, when analyzed under federal law principles shaped by the Bankruptcy Code, the court finds that consent may be established through an opt-out mechanism where affected parties receive clear, conspicuous notice and a meaningful opportunity to decline or opt out of giving releases to non-debtor parties.

Even if state law were to govern the consent inquiry, the result in the instant case would be the same. For example, in an employment-related case applying Puerto Rico law, the First Circuit held that consent to a contract may be implied through inaction. See, Rivera-Colon v. AT&T Mobility Puerto Rico, Inc., 913 F.3d 200 (1st Cir. 2019). The First Circuit explained that silence or failure to opt out can constitute acceptance where the circumstances create a reasonable expectation that a person would speak if they did not agree. Id. In reaching this conclusion, the court relied, in part, on the Restatement (Second) of Contracts as the Puerto Rico Supreme Court had not spoken on the specific question of whether silence is acceptance when the offeror conditions that it will be.[12] Id. Thus, where a party is clearly informed that its rights

[12] The First Circuit also considered cases where the Puerto Rico Supreme Court found that implied consent to a contract is enough to meet the Puerto Rico definition of acceptance. See, AT&T Mobility, 913 F.3d at 209, citing Teachers Annuity & Ret. Sys. v. Sociedad de Gananciales, 115 D.P.R. 277, 15 P.R. Offic. Trans. 372, 386-87 (1984) and Colón Gutiérrez v. Registrador, 114 D.P.R. 850, 14 P.R. Offic. Trans. 1095, 1110 (1983) (noting that consent to an agreement can be given "expressly or impliedly").

will be affected absent action, and is given a meaningful opportunity to respond, its silence may reasonably be construed as consent under Puerto Rico law.

We now turn to the Debtors' *Third Amended Chapter 11 Plan* and its supporting documents to evaluate whether its third-party releases are consensual and, thus, valid under Purdue Pharma.

*B. The Debtors' Third Amended Chapter 11 Plan*

As pertinent to the U.S. Trustee's objection, the *Third Amended Chapter 11 Plan* defines a "Third-Party Release" as a "release[] given by each of the Releasing Parties to the Released Parties as set forth in Section 10.05 of the Plan". Dkt. #1451, § 1.150, p. 26. In turn, Section 10.05 provides as follows:

> [a]s of the Effective Date, the Releasing Parties conclusively, absolutely, unconditionally, irrevocably, and forever discharge and release (and each entity so discharged and released shall be deemed discharged and released by the Releasing Parties) the Released Parties (but not the Excluded Released Parties), in all capacities, and their respective property from any and all Claims, Interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, the Liquidating Debtors, or their Estates, any Claims or causes of action asserted on behalf of any Holder of any Claim or any Interest or that any Holder of a Claim or an Interest would have been legally entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, at law, in equity, or otherwise, that such Releasing Party would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising prior to the Effective Date, and even since their pre-petition appointment for restructuring and reorganization endeavors, from, in whole or in part, directly or indirectly, in any manner whatsoever, the Debtors, the assets, liabilities, operations, or business of the Debtors, the Chapter 11 Cases, the purchase, sale, or transfer of any debt, security, asset, right, or interest of the Debtors or the Liquidating Debtors, the making of any loan to the Debtors or the Liquidating Debtors, the subject matter of, or the transactions or events giving rise to, any Claim against or Interest in the Debtors that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation, or preparation of the DIP Credit Agreement documents or related agreements,

> instruments, or other documents, the negotiation, formulation, or preparation of the Plan, the Global Term Sheet, the Prepetition First Lien Credit Agreement, the Prepetition Second Lien Credit Agreement, or any related agreements or instruments, or the solicitation of votes with respect to the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that nothing in the Plan shall be construed to release the Released Parties from any claims based upon willful misconduct, intentional fraud or gross negligence, as determined by a Final Order; provided further, that the provisions of this paragraph shall not apply to the Excluded Released Parties or any Claims, Interests, or Causes of Action that constitute Liquidating Trust Assets, including, but not limited to, Avoidance Actions (except for any Avoidance Actions that exist, may exist, or could have existed against the Prepetition First Lien Secured Parties, the Prepetition Second Lien Secured Parties, the DIP Agent, and/or the DIP Lender, which such Avoidance Actions shall be released pursuant to the Plan), and D&O Claims.
>
> Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy court's finding that the Third-Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of claims released by the Third-Party Release; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property released pursuant to the Third-Party Release.

Dkt. #1451, § 10.05, pp. 57-58.

That is, pursuant to Section 10.05, as of the Effective Date (as this term is defined in the *Third Amended Chapter 11 Plan*), certain parties permanently give up and are barred from bringing any claims against a defined group of Released Parties for anything related to the Debtors, their business, or the bankruptcy process that occurred before that date. Notably, the Third-Party Releases specifically exclude: (a) claims for willful misconduct, intentional fraud or gross negligence, as determined by a Final Order; and (b) "any Claims, Interests, or Causes of

Action that constitute Liquidating Trust Assets, including, but not limited to, Avoidance Actions (except for any Avoidance Actions that exist, may exist, or could have existed against the Prepetition First Lien Secured Parties, the Prepetition Second Lien Secured Parties, the DIP Agent, and/or the DIP Lender, which such Avoidance Actions shall be released pursuant to the Plan), and D&O Claims". dkt. #1451, p. 58.

"Released Parties" are defined as follows:

> "Released Parties" means, collectively (a) Debtors appointed reorganization officers which are limited to include: (i) the current and former members of the Special Committee and; (ii) the Ankura professionals who serve as officers of the Debtors; (b) the Prepetition First Lien Secured Parties; (c) the Prepetition Second Lien Secured Parties; (d) the DIP Agent; (e) the DIP Lender; (f) with respect to each of the foregoing entities in clauses (a) through (g), each of their current and former affiliates; and (h) with respect to each of the foregoing entities in clause (a), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, and advisory board members; provided, however, no Expressly Excluded Released Parties shall be considered a Released Party.[13]

Dkt. #1451, § 1.135, p. 23.

"Releasing Parties" are defined as follows:

> "Releasing Parties" means, collectively, (a) the Debtors; (b) the Prepetition First Lien Secured Parties; (c) the Prepetition Second Lien Secured Parties; (d) the DIP Agent; (e) the DIP Lender; (f) with respect to each of the foregoing parties under (a) through (e),

---

[13] The "Expressly Excluded Released Parties" include:

> (i) non-Debtor subsidiary Sabiamed Corporation, (ii) non-debtor affiliates or non-debtor subsidiaries of the Debtors and (iii) all current and former directors and officers of the Debtors, except for the current and former members of the Debtors' Special Committee and the Ankura professionals who serve or served as officers of the Debtors as defined at section 1.135. For the avoidance of doubt, no member of the Rodriguez family, including but not limited to Armando J. Rodriguez-Benitez or Heidi L. Rodriguez-Benitez, shall be an Exculpated Party or Released Party, and each is included in the definition of Expressly Excluded Released Parties.

Dkt. #1451, § 1.67, p. 14.

> each of their current and former affiliates and/or subsidiaries; (g) with respect to each of the foregoing entities in clauses (a) through (e), such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, and advisory board members, and such persons' respective heirs, executors, estates, servants, and nominees; and (h) without limiting the foregoing, each Holder of a Claim against or Interest in the Debtors that (i) (a) has filed an electronic appearance on the record of these cases, or (b) is represented by legal counsel on the record of these cases, or (c) was duly notified in these cases and received copies of the Plan and the ballots; and either (ii) has voted to accept the plan; or (iii) voted to reject the Plan and did not elect to opt out of the releases provided for in the Plan; or (iv) abstained from voting or was not entitled to vote on the Plan and did not elect to opt out of the releases provided for in the Plan.

Dkt. #1451, § 1.136, pp. 23-24.

Creditors are thus only bound by the Third-Party Releases if they (i) voted to accept the *Third Amended Chapter 11 Plan*, (ii) voted to reject the *Third Amended Chapter 11 Plan* and did not elect to opt-out of the Third-Party Releases in the Ballot, or (iii) abstained from voting or were not entitled to vote on the *Third Amended Chapter 11 Plan* and did not elect to opt-out of the Third-Party Releases provided in Section 10.05 using the mechanisms provided therein and which will be discussed *infra*. This is also addressed in the definition of "Excluded Releasing Parties", which provides that:

> "Excluded Releasing Parties" means any Holder of a Claim against or Interest in the Debtors that (i) (a) has filed an electronic appearance on the record of these cases, or (b) is represented by legal counsel on the record of these cases, or ( c) was duly notified in these cases and received copies of the Plan and the ballots; and either (ii) was entitled to vote on the Plan, and voted to reject the Plan, and elected to opt out of the releases provided for in the Plan; or (iii) abstained from voting or was not entitled to vote on the Plan, and elected to opt out of the releases provided for in the Plan.

Dkt. #1451, § 1.68, p. 14.

On the matter of exculpation and limitation of liability, Section 10.6 of the *Third Amended Chapter 11 Plan* provides that:

> [t]o the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby released and exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, remedy, loss, and liability for any potential claim between the Petition Date and the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the DIP Credit Agreement, the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; the funding or consummation of the Plan; the Global Term Sheet; the transfer, creation, and constitution (as applicable) of the Liquidating Trust and/or the Liquidating Debtors; the distributions or actions to be taken by the Liquidating Trustee and/or the Liquidating Debtors in consummation of the Plan; the Debtors' sales and marketing process, the Bidding Procedures, the Bidding Procedures Motion, and the Bidding Procedures Order; the occurrence of the Effective Date; the administration of the Plan or the property to be distributed under the Plan; or the transactions in furtherance of any of the foregoing, except for fraud, willful misconduct, or gross negligence, as determined by a Final Order. This exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability, *provided that* the provisions of this paragraph shall not apply to the Expressly Excluded Exculpated Parties.

Dkt. #1451, § 10.06, p. 58.

The *Third Amended Chapter 11 Plan* defines "Exculpated Parties" as:

> (a) the Debtors; (b) the Creditors' Committee and each of its members, solely in their capacities as such; (c) the Liquidating Debtors, solely if acting in a capacity as fiduciaries for the Debtors' estate; (d) the current and former members of the Special Committee; (e) the Ankura professionals who serve as officers of the Debtors; (f) the Prepetition First Lien Secured Parties; (g) the Prepetition Second Lien Secured Parties; (h) the DIP Agent; (i) the DIP Lender; (j) Liquidating Trustee (k) with respect to each of the foregoing … their current and former affiliates (except non-debtor affiliates or non-debtor subsidiaries of the Debtors); and … such entities' predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund

> advisors, and other professionals, and such persons' respective heirs, executors, estates, servants, and nominees, but shall not include the Expressly Excluded Exculpated Parties.

Dkt. #1451, § 1.69, p. 15.

Meanwhile, "Expressly Exculpated Parties"

> includes, but is not limited to, (i) non-Debtor subsidiary Sabiamed Corporation, (ii) non-debtor affiliates or non-debtor subsidiaries of the Debtors, and (iii) all current and former directors and officers of the Debtors, except for the current and former members of the Debtors' Special Committee and the Ankura professionals who serve or served as officers of the Debtors as defined n section 1.69. For the avoidance of doubt, no member of the Rodriguez family, including but not limited to Armando J. Rodriguez-Benitez or Heidi L. Rodriguez-Benitez, shall be an Exculpated Party or Released Party, and each is included in the definition of Expressly Excluded Released Parties.

Dkt. #1451, § 1.70, p. 15.

Lastly, Section 10.07 of the *Third Amended Chapter 11 Plan* provides as follows:

> (a) [e]xcept as expressly provided in the Plan, the Definitive Documents, the Confirmation Order, or a separate order of the Bankruptcy Court or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are enjoined, on and after the Effective Date through and until the date upon which all remaining property of the estate vested in the Liquidating Debtors has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan and the Plan has been fully administered, solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the estate, the Debtor, the Liquidating Debtors, the Liquidating Trustee, or the property of any of the estate, the Debtor, the Liquidating Debtors, or the Liquidating Trustee, as applicable; (ii) enforcing, levying, attaching (including, without

limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the estate, the Debtor, the Liquidating Debtors, the Liquidating Trustee, or the property of any of the estate, the Debtor, the Liquidating Debtors, or the Liquidating Trustee, as applicable; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the estate, the Debtor, the Liquidating Debtors, the Liquidating Trustee, or the property of any of the estate, the Debtor, the Liquidating Debtors, or the Liquidating Trustee, as applicable; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the estate, the Debtor, the Liquidating Debtors, or the Liquidating Trustee, as applicable, or against property or interests in property of any of the estate, the Debtor, the Liquidating Debtors, or the Liquidating Trustee except as otherwise contemplated or Allowed by the Plan; and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

(b) By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth in this Section.

(c) The injunctions in this Section shall extend to any successors of the Debtors, the wind down Estates, the Liquidating Debtors, and the Liquidating Trustee, as applicable, and their respective property and interests in property.

(d) Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement executed to implement the Plan.

(e) The temporary injunctions in the Plan shall extend to any successors of the Debtors and the Liquidating Debtors, or any transferee of property of the Debtors, including the Liquidating Trustee (as applicable) and their respective property and interests in property.

(f) Nothing in the Plan or Confirmation Order shall grant the Debtors a discharge pursuant to section 1141 (d) of the Bankruptcy Code.

Dkt. #1451, § 10.07, pp. 58-60.

This provision imposes a broad post-Effective Date injunction prohibiting all claim and interest holders from pursuing or enforcing any actions against the Debtors, the estate, or related parties with respect to claims addressed by the *Third Amended Chapter 11 Plan*, while requiring compliance with the *Third Amended Chapter 11 Plan*'s terms. By accepting distributions, holders are deemed to consent to and be bound by these injunctions, which also extend to successors and related parties, but do not prevent actions to enforce the *Third Amended Chapter 11 Plan* itself.

Based on the above, the court finds that the *Third Amended Chapter 11 Plan* complies with Fed. R. Bankr. P. 3016(c), as it describes in clear and conspicuous language all acts to be enjoined, and the entities subject to the injunction.

*C. The Ballot and the Notice of Non-Voting Status and Opt-Out Form*

The Ballot included as Exhibit 2 to the *Third Amended Chapter 11 Plan* contains multiple prominent warnings regarding the *Third Amended Chapter 11 Plan*'s third-party release provisions. <u>See</u>, dkt. #1470, Exhibit 2. Early in the Ballot, creditors are advised that the *Third Amended Chapter 11 Plan* includes release, exculpation, and injunction provisions that may affect their rights even if they abstain from voting.[14] The Ballot further explains that creditors who vote to accept the *Third Amended Chapter 11 Plan* will be deemed to consent to the Third-Party Releases, and that creditors who vote to reject the *Third Amended Chapter 11 Plan* and fail to check the opt-out box will likewise be deemed to have consented to the Third-Party

---

[14] Specifically, the Ballot includes the following language in a box, in boldface:

> Please be advised that Article X of the Plan contains release, exculpation and injunction provisions. These provisions are included in the Ballot. You are advised to review and consider the Plan carefully because your rights might be affected thereunder even if you abstain from voting. If you (a) abstain from voting or (b) vote to reject the Plan and, in each case, do not check the box in Item 3 below, as may be applicable to you, you may be deemed to have consented to the release provisions set forth in Article X of the Plan.

Dkt. #1470-3, p. 3.

Release contained in Section 10.05.[15] The Ballot repeatedly directs creditors to review the relevant provisions in the *Third Amended Chapter 11 Plan* and the approved *Disclosure Statement*, and it goes as far as to include the specific language from Sections 10.04, 10.05, 10.06 and 10.07 of the *Third Amended Chapter 11 Plan* as well as the definitions included in the *Third Amended Chapter 11 Plan* for relevant terms, such as "Released Parties" and "Releasing Parties". See, dkt. #1470-3, pp. 6-12. Importantly, the Ballot warns that even creditors who vote to reject the *Third Amended Chapter 11 Plan* as well as those who abstain from voting, will still be deemed to grant the Third-Party Releases unless they affirmatively opt out before the voting deadline, see, dkt. #1470-3, pp. 3, 5, 13, and includes an opt-out box, see, dkt. #1470-3, p. 13.

The Debtors also distributed notice and opt-out materials to creditors who were not entitled to vote in the form of a Notice of Non-Voting Status and Opt-Out Form included as Exhibit 3 of the *Third Amended Chapter 11 Plan*, which included similar language to that of the Ballot. See, dkt. #1470-4. Importantly, the Notice of Non-Voting Status and Opt-Out Form provides that if they "do not check the box in Item 1 below [they] will be deemed to have

---

[15] The Ballot provides the following, in boldface:

> Before voting on the Plan, please note the following:
>
> If you vote to accept the Plan, you shall be deemed to have consented to the release, provisions set forth in Article 10.05 of the Plan.
>
> If you vote to reject the Plan and, do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Article 10.05 of the Plan.
>
> If you abstain from voting and you are a holder of a Claim against the Debtors which was duly notified in these cases and received or reviewed copies of the Plan and the Ballot, and do not check the box in Item 3 below, you shall be deemed to have consented to the release provisions set forth in Article 10.05 of the Plan.
>
> The Disclosure Statement and the Plan must be referenced for a complete description of the release, injunction, and exculpation provisions in Article 10.05 of the Plan.
>
> Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out.

Dkt. #1470-3, p. 5.

consented to the release provisions set forth in Article 10.05 of the [*Third Amended Chapter 11 Plan*]". Dkt. #1470-4, p. 3 and 10. (Original emphasis omitted).

*D. Solicitation and Voting Results*

At the Confirmation Hearing held on March 9, 2026, counsel for the Debtors informed the court that there had been substantial support for the *Third Amended Chapter 11 Plan* and summarized the Ballots received from each creditor by class, referencing the following docket entries: dkts. ##1570, 1691, 1696, 1698, 1699. See, dkt. #1701, p. 3, ¶¶9-11.

The votes received in validly executed Ballots and Notice of Non-Voting Status and Opt-Out Form are summarized below:[16]

| Voting Class | Votes Accepting the *Third Amended Chapter 11 Plan* | Votes Rejecting the *Third Amended Chapter 11 Plan* |
|---|---|---|
| **Article II** Allowed Priority Wage Claims | 942 | 13 |
| **Class 1**[17] LUMA | 1 | 0 |
| **Class 2**[18] CRIM Secured Claims | 1 | 0 |
| **Class 3**[19] SL Funding Secured Claims | 1 | 0 |
| **Class 4** Prepetition First Lien Secured Claims | 2 | 0 |
| **Class 5**[20] IRS Secured Claims | | |

[16] See, dkt. #1570, p.8; dkt. #1691, pp. 6-9; dkt. #1696, Exhibit 1, pp. 1-77; and dkt. #1698, Exhibit 1, pp. 1-48.

[17] See, *Joint Stipulation and Supplement to Plan of Liquidation*, dkt. #1740; and dkt. #1749.

[18] See, *Stipulation for the Treatment of CRIM's Secured Claims and Withdrawal of CRIM's Objections to Debtors' Post Petition Financing and Sale of Assets*, dkt. #250 as clarified at dkt. #276; dkt. #284.

[19] See, *Joint Motion Informing Settlement and Resolution of the SL Funding Disputed Claims*, dkt. #1154; dkt. #1167.

[20] The DOJ (acting on behalf of the IRS) had filed an objection to the *Third Amended Chapter 11 Plan*. Dkt. #1621. After engaging in settlement discussions with the Debtors to address the objection (see, dkts. ##1771, 1777, 1812, 1823), the DOJ (acting on behalf of the IRS) ultimately withdrew its objection and stated that such withdrawal did not suggest that it supports confirmation. See, dkt. #1850. The record does not reflect a vote by the Internal Revenue Service either accepting or rejecting the *Third Amended Chapter 11 Plan*. See, dkt. #1570, p.8; dkt. #1691, pp. 6-9; dkt. #1696, Exhibit 1, pp. 1-77; and dkt. #1698, Exhibit 1, pp. 1-48.

| | | |
|---|---|---|
| **Class 6** Other Secured Claims | 10 | 0 |
| **Class 7** Prepetition Second Lien Secured Claims | 1 | 0 |
| **Class 8** AAFAF Priority Claim and Other Tax Priority Claims | 7 | 0 |
| **Class 9** General Unsecured Claims | 837 | 16 |

The Debtors also disclosed that, by October 14, 2025, twenty-nine (29) parties elected to opt-out of the Third-Party Releases by following the opt-out procedure established in the *Third Amended Chapter 11 Plan* (see, dkt. #1570, ¶13 and p. 16). The court notes that, per the Ballots produced by the Debtors in the supplements to the *1129 Statement* at dkts. ##1696 and 1698, certain creditors that voted to accept the *Third Amended Chapter 11 Plan* marked the opt-out box in their Ballots.[21] However, the definition of Releasing Parties in *Third Amended Chapter 11 Plan* includes those that voted to accept the *Third Amended Chapter 11 Plan* (see, dkt. #1451, § 1.136, pp. 23-24). In other words, creditors that vote to accept the *Third Amended Chapter 11 Plan* cannot opt out of the Third-Party Releases. Thus, such opt-outs are not valid pursuant to the terms of the *Third Amended Chapter 11 Plan*.[22]

*E. Discussion*

*i. The Third-Party Releases in the Third Amended Chapter 11 Plan Are Consensual*

First, the court notes that the *Third Amended Chapter 11 Plan* provides that "[e]ntry of the Confirmation Order shall constitute the Bankruptcy court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release". Dkt. #1451, p. 58. Thus, it is further clarified that the

---

[21] See, dkt. #1696, Exhibit 1, pp. 33-45 (Municipality of Fajardo); dkt. #1698, Exhibit 1, pp. 1-16 (Puerto Rico Department of Labor), pp. 17-32 (State Insurance Fund Corporation), and pp. 33-48 (Puerto Rico Department of Treasury).

[22] The Debtors did not provide the Ballots and/or Notice of Non-Voting Status and Opt-Out Form of the twenty-nine (29) parties that it disclosed had elected to opt-out of the Third-Party Releases in the 1129 Statement at dkt. #1570. Thus, the court cannot assess at this juncture whether these are valid under the terms of the *Third Amended Chapter 11 Plan*.

court had not previously approved or entered a determination as to the validity of the Third-Party Releases in the *Third Amended Chapter 11 Plan* as the matter was taken under advisement as reflected in the *Minutes* of the Confirmation Hearing. See, dkt. #1701, p. 4, ¶¶3-6.

Determining whether to enforce the opt-out mechanism for third-party releases under a Chapter 11 plan requires a fact-intensive, case-by-case inquiry. Here, the record demonstrates that creditors received clear, adequate notice of the Third-Party Releases and were afforded a meaningful opportunity to opt out therefrom. Accordingly, the court concludes that the Third-Party Releases in the *Third Amended Chapter 11 Plan* are consensual and enforceable.

Under the terms of the *Third Amended Chapter 11 Plan*, the Third-Party Releases apply to creditors that (i) filed an appearance in the case, (ii) were represented by counsel, or (iii) received notice of the Plan and solicitation materials, and who, in addition, either (a) voted to accept the *Third Amended Chapter 11 Plan*, (b) voted to reject the *Third Amended Chapter 11 Plan* but did not opt out of the releases, or (c) abstained from voting or were not entitled to vote and did not opt out. See, dkt. #1451, § 1.136, pp. 23-24. Thus, every creditor bound by the Third-Party Releases was provided with an opportunity to opt out.

The record further reflects that creditors were given clear and conspicuous notice of both the existence and effect of the Third-Party Releases, as well as the procedure for opting out. The *Third Amended Chapter 11 Plan* and solicitation materials repeatedly and prominently explained (1) the scope and effect of the Third-Party Releases and (2) that creditors who did not wish to be bound could opt out by following a simple procedure. The opt-out mechanism itself was straightforward and user-friendly, requiring only that a creditor check a clearly marked box in the Ballot or the Notice of Non-Voting Status and Opt-Out Form depending on the creditor class. In total, the Debtors received thirty-three (33) opt-out elections although, as noted above, four (4) of them were not valid.

Courts have consistently held that a creditor's failure to opt out of third-party releases constitutes consent where the solicitation materials clearly explain the opt-out process and provide adequate notice of the consequences of inaction. See, *e.g.*, In re Avianca Holdings S.A.,

632 B.R. 124, 137 (Bankr. S.D.N.Y. 2021) (finding consent where the ballot "clearly and conspicuously explained" the opt-out procedure and warned that failure to opt out would result in being bound by the releases). The same is true here. Creditors were informed in plain terms that failure to opt out would result in their consent to the Third-Party Releases.

The Third-Party Releases and related injunction provisions are also consistent with Sections 105, 1123, and 1129 of the Bankruptcy Code, 11 U.S.C. §§ 105, 1123, 1129, and are integral to the overall structure of the *Third Amended Chapter 11 Plan*. As the Debtors have represented, the Third-Party Releases are the product of extensive, arm's-length negotiations among key stakeholders, and are a central component of the *Third Amended Chapter 11 Plan*.

Creditor response further supports enforcement of the opt-out mechanism. Notably, no creditor objected to the Third-Party Releases or the opt-out procedures at the confirmation stage. Moreover, all impaired voting classes overwhelmingly voted to accept the *Third Amended Chapter 11 Plan*, demonstrating broad creditor support. The limited number of opt-outs, in the absence of any objections, reinforces the conclusion that creditors understood their rights and knowingly chose whether to participate in or decline the releases.

For all of these reasons, the court finds that creditors received adequate notice of the Third-Party Releases, were clearly informed of the consequences of failing to opt out, and were provided with a meaningful opportunity to decline participation. The Third-Party Releases are therefore consensual and enforceable.

The court notes that this holding is necessarily limited to the specific facts presented in the instant cases. The court's conclusion rests on the clarity and prominence of the disclosures made by the Debtors, the simplicity of the opt-out mechanism, and the overall context of creditor engagement in this case. It should not be construed as establishing a rule of general applicability regarding third-party releases in all Chapter 11 cases.

*ii. The Exculpation and Injunction Provisions Are Necessary to Effectuate the Third Amended Chapter 11 Plan*

The court also finds that the exculpation and injunction provisions set forth in Sections 10.06 and 10.07 of Article X of the *Third Amended Chapter 11 Plan* are valid and constitute essential components of the *Third Amended Chapter 11 Plan*. The injunction provisions in Section 10.07 are necessary to implement, enforce, and give effect to the terms and provisions of the *Third Amended Chapter 11 Plan* and are appropriately tailored to apply solely to Claims, Interests, and Causes of Action treated under the *Third Amended Chapter 11 Plan*, including by enjoining parties from commencing or continuing actions, enforcing judgments, or otherwise acting in a manner inconsistent with the *Third Amended Chapter 11 Plan*. The exculpation provisions in Section 10.06 are essential to the *Third Amended Chapter 11 Plan* and are fully supported by the record in these Chapter 11 cases, and are appropriately tailored to protect the Exculpated Parties from liability for conduct undertaken in connection with the *Third Amended Chapter 11 Plan* and the restructuring process, subject to the limitations set forth in the *Third Amended Chapter 11 Plan*, including for fraud, willful misconduct or gross negligence. Taken together, these provisions are consistent with Sections 105, 1123, and 1129 of the Bankruptcy Code, 11 U.S.C. §§ 105, 1123, 1129, and constitute a proper means of implementing the *Third Amended Chapter 11 Plan*.

## V. Conclusion

For the reasons stated above, the court concludes the Third-Party Releases contained in the Debtors' *Third Amended Chapter 11 Plan* are appropriate under the circumstances of these Chapter 11 Cases. The affected parties received adequate notice and an opportunity to opt out of the Third-Party Releases. Thus, the Third-Party Releases are consensual and valid pursuant to Purdue Pharma. Furthermore, the court finds that the exculpation and injunction provisions set forth in Sections 10.06 and 10.07 of Article X of the *Third Amended Chapter 11 Plan* are valid and constitute essential components of the *Third Amended Chapter 11 Plan*.

In consideration of the above, the court **OVERRULES** the U.S. Trustee's *Objection* (dkt. #1652). A separate order confirming the *Third Amended Chapter 11 Plan* has been entered (dkt. #1909).

In San Juan, Puerto Rico, this 24th day of August 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge